**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MAURICE BAILEY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)　　　Case No. 2:21-cv-179
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　Magistrate Judge Patricia L. Dodge
JOHN WETZEL, MARC CAPOZZA and　)
ALBERT WOOD,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)

## <u>MEMORANDUM OPINION</u>[1]

### I.　　Relevant Background

Plaintiff, who is proceeding *pro se* and was granted leave to proceed *in forma pauperis*, is a state prisoner housed at SCI Fayette. In his Complaint (ECF 10), he names as defendants: (1) John Wetzel, the former Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) SCI Fayette Superintendent Marc Capozza; and (3) SCI Fayette Security Lieutenant Albert Wood. Plaintiff sues each defendant in his individual and official capacity. (ECF 10, Compl. ¶¶ 4-7.)

The Complaint asserts constitutional tort claims against each defendant under 42 U.S.C. § 1983 and related supplemental state law claims. Pending before the Court is Defendants' Partial Motion to Dismiss the Complaint (ECF 18) which has been fully briefed. (ECF 19, 23.) For the reasons that follow, the Court will grant in part and deny in part Defendants' motion.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

II.     **Factual Allegations in the Complaint**

Plaintiff is SCI Fayette's Nation of Islam ("NOI") inmate minister. (ECF 10, Compl. ¶ 8.) The claims he asserts against Defendants are premised on his allegations Lt. Wood falsely told multiple NOI inmates that Plaintiff was an informant and issued false reports that Plaintiff put a hit out on two other NOI inmates, Carlos Mathis and Lamar Gurdine.

According to the allegations in the Complaint, in the spring of 2019, Lt. Wood called Plaintiff to the security office and informed him that Mathis was placed in the Restrict Housing Unit ("RHU") for violating DOC rules and was going to be transferred to another correctional institution. (*Id.* ¶ 9.) Similarly, around June 2019, Lt. Wood advised Plaintiff that Gurdine had also committed DOC rule violations. Not long after this meeting, Gurdine was placed in the RHU and, like Mathis, was transferred to another correctional institution. (*Id.* ¶ 17.)

Plaintiff alleges that he was alarmed when he later read the DOC separation rationales for both Mathis and Gurdine, which stated that both inmates were transferred because "Plaintiff ordered hits on them." (*Id.* ¶ 18.) According to Plaintiff, these separation rationales were based on reports submitted by Lt. Wood that falsely claimed that Plaintiff had instructed other inmates to harm Mathis and Gurdine. Plaintiff asserts that if, in fact, he had been suspected of having placed a hit on either Mathis or Gurdine, he would have been placed in the RHU in accordance with DOC policy pending the completion of an investigation into his alleged misconduct. However, he was not housed in the RHU at any time during 2019. (*Id.* ¶¶ 20-23, 38-39.)

Sean Basemore, who is SCI Fayette's NOI assistant minister, informed Plaintiff that Lt. Wood "personally told multiple [NOI] inmates" that Plaintiff had "secretly requested" that Mathis and Gurdine be transferred and implied that Plaintiff was an informant against other NOI

inmates. (*Id.* ¶ 25; *see also id.* ¶ 42.) Plaintiff alleges that Lt. Wood deliberately targeted Plaintiff "with the above mentioned ruse" because Plaintiff is the NOI minister at SCI Fayette. (*Id.* ¶ 28.)

Plaintiff alleges that Supt. Capozza and Sec. Wetzel "requested and authorized" the separation rationales and transfer orders of Mathis and Gurdine. (*Id.* ¶¶ 23, 40.) Plaintiff asked Supt. Capozza and Sec. Wetzel, who are responsible for the welfare of the inmates housed at SCI Fayette, to authorize an independent investigation. Notwithstanding his request, Lt. Wood conducted the investigation and it "resulted in no relief for Plaintiff." (*Id.* ¶ 46.)

The Complaint brings constitutional tort claims under 42 U.S.C. § 1983. Plaintiff asserts a state-created-danger claim against Lt. Wood. (*Id.* ¶ 27.) He further contends that all defendants violated his rights under the First Amendment (*id.* ¶¶ 28-31) and the Equal Protection Clause (*id.* ¶ 32) by targeting him and treating him differently than similarly situated inmates because of his NOI religious beliefs. Plaintiff also brings state law claims of assault and defamation (both libel and slander), premised upon his allegations that Lt. Wood issued false reports claiming that Plaintiff placed a hit on Mathis and Gurdine and told other NOI inmates that he was an informant. (*Id.* ¶¶ 34-43.)

Plaintiff seeks damages, declaratory relief and injunctive relief in the form of an order enjoining "Defendants from targeting Plaintiff and all other inmates who believe in the [NOI] religion."[2] (*Id.* ¶¶ 44-51.)

---

[2] Plaintiff also requests that this Court "commission an independent, criminal investigation with the Department of Justice into Plaintiff's claim Defendant Wood attempted to manipulate NOI inmates into physically harming Plaintiff." (ECF 10, Compl. ¶ 46.) A civil rights action is not a proper vehicle in which to attempt to bring criminal charges, however. *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (citations omitted); *see Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate criminal proceedings).

In Defendants' Partial Motion to Dismiss the Complaint (ECF 18), they move for the dismissal under Federal Rule of Civil Procedure 12(b)(6)[3] of all claims asserted in the Complaint except for the state-created-danger and equal protection claims asserted against Lt. Wood.

## III.   Standard of Review

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, conclusory allegations "are not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In other words," the Third Circuit Court of Appeals has explained, the court "'must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

---

[3] Defendants' sovereign immunity argument touches upon the Court's subject matter jurisdiction. Rule 12(b)(1) provides that "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see* Fed. R. Civ. P. 12(h)(3). Where, as is the case here, a defendant makes a facial challenge to the allegations of the complaint, the court applies the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). *See*, *e.g.*, *In re: Horizon Healthcare Serv. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017); *see also Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ("A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true.") (internal quotation and citation omitted.)

conclusions.'" *Id.* (quoting *Fowler*, 578 F.3d at 210-11). The court must "also disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to

liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules— they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## IV.   Discussion

### 1.   Section 1983 Claims

Plaintiff's constitutional tort claims against Defendants are asserted under § 1983, which "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012). Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. *See*, *e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See*, *e.g.*, *id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Corr. Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants,

Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

### a. *Individual Capacity Claims Against Sec. Wetzel and Supt. Capozza*

As set forth above, only a person who "subjects or causes to be subjected" a plaintiff to a deprivation of rights can be held liable under § 1983. The doctrine of respondeat superior, which makes an employer automatically responsible for the wrongdoing of employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. This means that supervisory officials such as Sec. Wetzel and Supt. Capozza cannot be held liable for every illegal act that takes place in SCI Fayette. Rather, they can be held liable only for their own conduct. *Id.*

Plaintiff alleges that Sec. Wetzel and Supt. Capozza "requested and authorized the separation rationales and transfer orders" of Mathis and Gurdine even though DOC policy allegedly was not followed (according to Plaintiff, he was not housed in the RHU, which would have occurred pursuant to DOC policy if he had been suspected of placing a hit on another inmate). (ECF 10, Compl. ¶ 23; *see also id.* ¶ 40.) The fact that Sec. Wetzel or Supt. Capozza allegedly failed to ensure that DOC policy was followed does not in itself give rise to a constitutional claim against them. *See*, *e.g.*, *Green v. Coleman*, No. 2:15-cv-155, 2016 WL 5477578, at *4 (W.D. Pa. Aug. 18, 2016), report and recommendation adopted by 2016 WL 5468190 (W.D. Pa. Sept. 29, 2016) (a violation of policy does not rise to the level of a constitutional violation) (citing *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004); *see also Atwell v. Lavan*, 557 F. Supp.2d 532, 556 n.24 (M.D. Pa. 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). Thus, to the extent that Plaintiff is asserting that

7

Sec. Wetzel and Supt. Capozza directly violated his federal rights for failing to ensure that DOC policy was followed, he fails to state a claim against them for this alleged misconduct.

Since the doctrine of respondeat superior does not apply under § 1983, Sec. Wetzel and Supt. Capozza cannot be held liable to Plaintiff merely because their subordinate, Lt. Wood, allegedly violated Plaintiff's constitutional rights. The Court of Appeals has identified three ways in which a supervisor-defendant such as Sec. Wetzel and Supt. Capozza may be liable for unconstitutional acts undertaken by subordinates. Liability may attach if the supervisor: (1) directed the subordinate to take the action in question; (2) had "knowledge of and acquiesced" in the subordinate's unconstitutional conduct, meaning the supervisor actually knew that his or her subordinate was violating the plaintiff's rights but failed to stop the subordinate from doing so; or (3) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation. *See*, *e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Rode*, 845 F.2d at 1208; *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997). Allegations of personal involvement after-the-fact are insufficient to give rise to personal involvement. See, *e.g.*, *Rode*, 845 F.2d at 1208.

The Complaint lacks any factual allegation that either Sec. Wetzel or Supt. Capozza directed Lt. Wood's complaint-of actions. Rather, Plaintiff attempts to impute liability to them by invoking the second and/or third theories outlined above. Plaintiff alleges that Sec. Wetzel and Supt. Capozza were deliberately indifferent towards his First Amendment rights because Sec. Wetzel "maintained [a] custom of allowing prison officials to target [NOI] inmates with counter-terrorism tactics" and Supt. Capozza "authorized prison officials under his direct command to engage in a conspiracy to orchestrate Plaintiff's assassination." (*Id.* ¶¶ 29-31). These

8

types of broad and conclusory allegations that attempt to impute personal involvement in Lt. Wood's misconduct warrant no presumption of truth, however. *See Iqbal*, 556 U.S. at 681; *Santiago*, 629 F.3d at 131-32.

Moreover, a custom is a practice "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted); *see, e.g., Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) ("A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'") (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). There are no allegations in the Complaint that would allow the inference that Lt. Wood's alleged actions represented conduct that was a persistent and widespread practice at SCI Fayette or that Sec. Wetzel or Supt. Capozza tacitly approved of Lt. Wood's alleged actions by permitting him to continue to engage in such conduct once Plaintiff complained to them about it.

Based upon the foregoing, the Complaint, when liberally construed, does not allege any specific facts showing that the requisite personal involvement on the part of either Sec. Wetzel or Supt. Capozza is sufficient to state a § 1983 claim against them.

The Court also notes that in his response in opposition to Defendants' motion, Plaintiff explains that his claims against Sec. Wetzel and Supt. Capozza are predicated on the allegation that they failed to take corrective action *after* Lt. Wood had engaged in his alleged misconduct. Specifically, Plaintiff explains that he is seeking to hold Sec. Wetzel and Supt. Capozza liable for Lt. Wood's alleged misconduct *because they denied the grievance Plaintiff filed reporting*

*Lt. Wood's plot against him and/or failed to commission an independent investigation into Lt. Wood's misconduct after they had been alerted it had occurred*. (ECF 23 at pp. 9-10.)[4]

Any assertion that Supt. Capozza failed to properly dispose of a single grievance, or that either Sec. Wetzel or Supt. Capozza failed to investigate alleged misconduct after the fact, does not state a plausible claim that they themselves had any personal involvement in Lt. Wood's misconduct. *See*, e.g., *Rode*, 845 F.2d at 1208 (involvement in disposing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mack v. Warden Loretto* FCI, 839 F.3d 286, 295 (3d Cir. 2016) (affirming district court's decision to dismiss plaintiff's claims against warden and deputy warden because the "complaint makes clear that [plaintiff] only spoke to these defendants after the alleged retaliation occurred," and provides no basis for inferring that they "were personally involved in any purported retaliation"); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (plaintiff's allegation that prison officials responded inappropriately, or failed to respond to a prison grievance, did not establish that the official was involved in the underlying unconstitutional conduct).

Therefore, the Court will dismiss Plaintiff's individual capacity § 1983 claims against Sec. Wetzel and Supt. Capozza.

---

[4] In his response to Defendants' motion, Plaintiff sets out the basis of his claims in order "[t]o be clear and remove any complexity" as to what claim he is asserting in the Complaint. (ECF 23 at pp. 8-9.) He then explains that he is seeking to hold Sec. Wetzel and Supt. Capozza liable because "Plaintiff reported [Lt. Wood's] plot in [DOC] Grievance #890241 to Defendants Capozza and Wetzel but [they] denied [his] request for an independent investigation (without Defendant Wood's involvement.)" (*Id.* at p. 10.)

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002). Because the Court cannot determine with certainty that Plaintiff will not be able to state a plausible claim against Sec. Wetzel and/or Supt. Wetzel in order to cure the pleading deficiencies discussed herein, he will be permitted the opportunity to file an amended complaint if he so chooses. The Court cautions Plaintiff, however, that should he choose to file an amended complaint and raise claims against Sec. Wetzel and/or Supt. Capozza predicated on their failure to properly dispose of his grievance or for failing to investigate Lt. Wood's alleged misconduct after it had occurred, such claims will be dismissed.

### b.   *Official Capacity Claims Against Each Defendant*

Plaintiff has asserted claims against all defendants in both their official and individual capacities. Defendants contend that Plaintiff's official capacity claims against them are barred by their immunity from such claims under the Eleventh Amendment.

A § 1983 claim asserted against an individual in his or her "official capacity" is synonymous with a claim against the entity that employs the individual (here, the DOC). *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690 (1978)). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

The Eleventh Amendment proscribes actions in the federal courts against states, their agencies and state officials acting within their official capacities. *Graham*, 473 U.S. at 165-67; *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89 (1984); *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("official capacity suits generally represent only another way of pleading an action against the state.") (citing *Lombardo v. PA. Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008)). It is well settled that the DOC and the facilities that comprise the DOC are agencies or arms of the Commonwealth of Pennsylvania and, as such, they and their employees who are sued in their official capacities are entitled to Eleventh Amendment immunity unless an exception to such immunity applies. *See, e.g., Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).

"Such immunity…may be lost in one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power." *Id.* Neither exception applies to Plaintiff's § 1983 claims. The Commonwealth has not waived its immunity, *see, e.g., id.* (citing Pa. Const. Art. I, § 11 and 42 Pa. Cons. Stat. § 8521(b)), and Congress did not abrogate states' sovereign immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979). Accordingly, all § 1983 claims asserted against Defendants in their official capacities are barred by the Eleventh Amendment and should be dismissed with prejudice for that reason.

Defendants point out that while claims against state officers in their official capacity for prospective relief are not barred by the Eleventh Amendment, this exception, first set forth in *Ex parte Young*, 209 U.S. 123 (1908), is "narrow," in that it "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)

12

(emphasis added) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013). The purpose of this exception ensures that state officials cannot employ the Eleventh Amendment in order to avoid compliance with federal law. *Id.* "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and alterations omitted).

Here, Plaintiff's claim for injunctive relief does not fit within the narrow *Ex parte Young* exception because the allegations of the Complaint are insufficient to establish that there is an ongoing constitutional violation. Rather, Plaintiff's claims are premised upon incidents of alleged misconduct on the part of Lt. Wood that occurred in 2019. Additionally, as the Court has already explained, the Complaint contains only an insufficient conclusory allegation that Sec. Wetzel maintained a custom of allowing prison officials to target NOI inmates when Lt. Wood allegedly engaged in his misconduct in 2019. It contains *no allegations* from which it could be reasonably inferred that such a custom is currently maintained by Sec. Wetzel, the DOC, Supt. Capozza or any other official at SCI Fayette.

Thus, the Court will grant Defendants' motion to the extent that they seek the dismissal of the claims Plaintiff asserts against them in their official capacities. Because the Court cannot determine with certainty that Plaintiff will not be able to state a plausible claim against any defendant in his official capacity in order to cure the pleading deficiencies discussed herein, he will be permitted the opportunity to file an amended complaint if he so chooses in this regard as well.

13

### c. *First Amendment Claim*

Defendants contend that Plaintiff has failed to state a First Amendment against Lt. Wood because he does not allege Lt. Wood interfered with his right to practice his religion. In response, Plaintiff asserts that Defendants are improperly describing his First Amendment claim. That claim, Plaintiff explains, is predicated upon his allegation that Wood targeted him "with an assassination plot because of his choice to practice" NOI religion. (ECF 23 at p. 12.) He is not claiming that Lt. Wood (or any defendant, for that matter) interfered with his right to practice his religion. (*Id.*)

Although Plaintiff did not expressly state that he is asserting a retaliation claim, that is, in fact, the First Amendment claim he is asserting in the Complaint. As previously discussed, the Court must read the allegations of his Complaint liberally and apply the relevant legal principle even if Plaintiff failed to name it. *Mala*, 704 F.3d at 244. To state a claim for retaliation under the First Amendment, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct; (2) the defendant at issue took adverse action against him; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that adverse action. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Accepting the facts alleged in the Complaint as true and construing them in the light most favorable to Plaintiff, he has alleged enough to state a plausible retaliation claim against Lt. Woods.

Thus, the Court will deny Defendants' motion to the extent it seeks the dismissal of Plaintiff's First Amendment claim against Lt. Wood.

### 2. State Law Claims

Defendants move to dismiss Plaintiff's supplemental defamation and assault claims because they are barred by their sovereign immunity under state law, which provides that "the

14

Commonwealth and its officials and employees acting within the scope of their duties, shall enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. § 2310.

The Pennsylvania legislature has not waived this immunity for intentional torts, including defamation and assault. *Armstrong v. Furman*, No. 3:19-cv-141, 2020 WL 94859, *2 (W.D. Pa. Jan. 8, 2020) (concluding that inmate's claim that corrections officer defamed him by wrongfully accusing him of possessing drugs, falsifying documents, and issuing a false misconduct report was barred by sovereign immunity); *Story v. Mechling*, 412 F. Supp. 2d 509, 518 (W.D. Pa. 2006) (inmate's claim that a corrections officer assaulted him by intentionally bumping into him on a prison walkway during regular work hours barred by sovereign immunity); *see also Sears v. McCoy*, No. 1:17-cv-869, 2021 WL 254067, *7 (M.D. Pa. Jan. 26, 2021) (sovereign immunity applies to Commonwealth employees in both their official and individual capacities so long as the employee was acting within the scope of their duties) (internal citations and quotations omitted); *Dec v. Pennsylvania State Police*, No. 2:12-cv-565, 2012 WL 6099078, *11-12 (W.D. Pa. Dec. 7, 2012) ("immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacity."). Defendants assert that there can be no dispute that their actions at issue in this lawsuit—reporting potential threats, placing inmates in the RHU and filing, requesting and authorizing transfer petitions—fall within their job duties.

The Court agrees that Plaintiff's assault and defamation claims are barred by sovereign immunity. In any event, Defendants alternatively argue that Plaintiff's assault and defamation claims should be dismissed for other reasons as well. Defendants contend that Plaintiff does not, and cannot, adequately state a claim of assault in this case. Under Pennsylvania law, an assault occurs when (1) a person acts without privilege, intending to cause harmful or offensive bodily

contact upon another or to put another in reasonable and immediate apprehension of harmful or offensive contact; and (2) the action does cause such an apprehension. *See*, *e.g.*, *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994); *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 255 (M.D. Pa. 2009); *Stilley v. University of Pittsburgh of Com. System of Higher Educ.*, 968 F. Supp. 252, 259 (W.D. Pa. 1996). An assault is an act intended to put another person in reasonable apprehension of an immediate battery, which act succeeds in causing an apprehension of that battery. *Dice v. Johnson*, 711 F. Supp. 2d 340, 364 (M.D. Pa. 2010); *Dull v. West Manchester Tp. Police Dept.*, 604 F. Supp. 2d 739 (M.D. Pa. 2009); *Mills v. City of Harrisburg*, 589 F. Supp. 2d 544 (M.D. Pa. 2008). Importantly, "[w]ords in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so." *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960) (emphasis added). "Threatening words alone are deemed insufficient [under Pennsylvania law] to put a person in reasonable apprehension of physical injury or offensive touching." *Id.* at 218.

As Defendants point out, Plaintiff alleges that Lt. Wood made statements to other inmates with the intent that his words would cause them to harm Plaintiff at a later time. These allegations simply do not state a claim of assault. There is no allegation that Lt. Wood himself presented a physical threat to Plaintiff or that he took some affirmative act intended to put Plaintiff in reasonable and immediate fear of harmful or offensive physical contact. Therefore, the facts asserted in the Complaint simply do not support an assault claim.

As for Plaintiff's defamation claims of slander and libel, Defendants assert that they are time-barred under the one-year statute of limitations applicable to such claims. 42 Pa. Cons. Stat. § 5523(1). A statute-of-limitations defense may be raised by a Rule 12(b)(6) motion if the

limitations bar is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249-51 (3d Cir. 2014); *Stephen v. Clash*, 796 F.3d 281 (3d Cir. 2015).

Pennsylvania law provides that for libel and slander claims, the "one-year clock starts to run from the date of publication." *Rizzo v. Nutanix, Inc.*, No. 20-cv-5140, 2021 WL 214504, at *4 (E.D. Pa. Mar. 31, 2021) (citing *In re Phila Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012)). Plaintiff's defamation claims are predicated on alleged written and oral statements made by Lt. Wood in 2019, more than one year prior to the commencement of this lawsuit in early 2021.[5] (ECF 10, Compl. ¶¶ 12, 17, 26, 35-36, 42.) Thus, Defendants argue, Plaintiff's libel and slander claims are time-barred.

Plaintiff counters that he "had to allow a substantial amount of time to pass once he learned of [the] plot against him" because Lt. Wood "would have claimed an investigation was ongoing." (ECF 23 at p. 15.) This argument provides no basis to excuse him from complying with the one-year statute of limitations, however.

To the extent that Plaintiff contends that the statute of limitations for his defamation claims was tolled while he exhausted his administrative remedies (*i.e.*, while an investigation into Plaintiff's complaint regarding Lt. Wood's alleged misconduct was ongoing), this argument has no merit. Pennsylvania's Prison Litigation Reform Act ("PLRA"), 42 Pa. Cons. Stat. Ann. § 6601 *et seq.*, not the federal PLRA, applies to his state law claims. *See* 42 Pa. Cons. Stat. Ann. § 6603(b) (stating that "prison conditions litigation arising in whole or in part due to an allegation of a violation of Pennsylvania law shall be subject to the limitations set forth in this act with respect to

---

[5] Plaintiff signed and dated his Complaint on January 1, 2021. (ECF 10, Compl. at p. 14.) It does not contain a verification as to when he placed it in the prison mailbox. The Complaint was received by this Court on February 5, 2021. (*Id.* at p. 1.)

those claims arising under Pennsylvania law"); *Paluch v. Palakovich*, 84 A.3d 1109, 1113 (Pa. Commw. Ct. 2014). Unlike the federal PLRA, Pennsylvania's PLRA does not require exhaustion. *Paluch*, 84 A.3d at 1113 (citing 37 Pa. Code § 93.9(b)). Thus, Pennsylvania's PLRA does not toll the statute of limitations while a prisoner exhausts his administrative remedies. *Id.*; *Barclay v. Washington*, No. 14-cv-6257, 2015 WL 6102344, at *3 (E.D. Pa. Oct. 15, 2015) (dismissing inmate's state-law claims as untimely and noting that, in contrast to his § 1983 claims, the statute of limitations for his state-law claims was not tolled while he exhausted his administrative remedies); *Douglas v. Joseph*, No. 1:13-cv1136, 2016 WL 561944, at *5 (M.D. Pa. Feb. 12, 2016) (federal prisoner's state-law conversion claim dismissed as untimely; noting that "[u]nlike federal law, there is no tolling of the statute of limitations for Pennsylvania state-law claims during the period [the inmate] exhausted his administrative remedies."), *aff'd*, 656 F. App'x 602 (3d Cir. 2016). Thus, since there is no question that Plaintiff filed the Complaint more than one year after his state law defamation claims of libel and slander accrued, those claims are time-barred.

In conclusion, the Court will grant with prejudice Defendants' motion to dismiss Plaintiff's state law assault and defamation claims because these claims are barred by sovereign immunity. Alternatively, Defendant's motion will be granted because the Complaint fails to state an assault claim against Lt. Wood because words, no matter how threatening, cannot constitute an assault and because Plaintiff's defamation claims are time-barred by Pennsylvania's one-year statute of limitations.

**V.      Conclusion**

Based upon the foregoing, the Court will grant in part and deny in part Defendants' Partial

Motion to Dismiss the Complaint. (ECF 18.)

An appropriate Order follows.


                                                    BY THE COURT:


Dated: November 12, 2021                            /s/ Patricia L. Dodge
                                                    PATRICIA L. DODGE
                                                    United States Magistrate Judge