IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE BAILEY, | ) |
| | ) |
| Plaintiff, | )   Case No. 2:21-cv-00179 |
| | ) |
| vs. | ) |
| | ) |
| ALBERT WOOD, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff, Maurice Bailey ("Bailey") commenced this civil rights action against Albert Wood ("Wood"), a security lieutenant at the State Correctional Institution ("SCI") at Fayette, in which Bailey asserts that by spreading false information about him to other prisoners, Wood put Bailey's safety at risk.

Presently pending is defendant Wood's Motion for Summary Judgment (ECF No. 52). For the reasons set forth below, Wood's motion will be granted.

**I.  Relevant Procedural History**

Bailey is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") who is currently incarcerated at SCI-Fayette, where the events at issue occurred. He is proceeding *pro se* in this civil rights action.

Bailey's Complaint was lodged on or around February 5, 2021. After he corrected various procedural defects, the operative Complaint was docketed on February 12, 2021 (ECF No. 10).

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636 (ECF Nos. 9, 21). Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

1

John Wetzel, Marc Capozza and Wood were named in the Complaint as defendants.

Defendants subsequently filed a Partial Motion to Dismiss (ECF No. 18) Bailey's claims. Their motion was granted in part and denied in part. Defendants Wetzel and Capozza were dismissed with prejudice. In addition, the claim against Wood in his official capacity was dismissed, as were Bailey's state law claims of assault and defamation. Although Bailey was granted leave to amend his Complaint, he did not do so. Thus, the remaining causes of action are only against Wood in his individual capacity and include a First Amendment retaliation claim, an equal protection claim, and a state-created-danger claim.

After discovery closed, Wood moved for summary judgment (ECF No. 52). In support of his motion, he filed a Concise Statement of Material Facts (ECF No. 53) and a supporting Brief (ECF No. 54). Bailey filed a Responsive Concise Statement of Material Facts (ECF No. 56) and a Brief in Opposition (ECF No. 57). Thus, Wood's motion for summary judgment is fully briefed and ripe for disposition.

## II. Relevant Factual Background[2]

As a security lieutenant at SCI-Fayette, Wood receives and assesses information about

---

[2] These facts are derived from Bailey's verified Complaint (ECF No. 10), Wood's Concise Statement of Material Facts (ECF No. 52), and Bailey's responsive Concise Statement of Material Facts (ECF No. 56) and are undisputed except where noted. The Court will consider Bailey's factual assertions to the extent that they are based on his personal knowledge, set out facts that would be admissible in evidence, and state competent testimony on the matters at issue. *See* Fed. R. Civ. P. 56(c)(4). The Court may consider Bailey's allegations that are contained in a verified complaint because the complaint can be treated as an affidavit or declaration. *See, e.g., Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003). However, a court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, No. 12-CV-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)); *Rinaldi v. United States*, No. 1:13-CV-450, 2019 WL 1620340, at *12 (M.D. Pa. Apr. 16, 2019).

potential security risks in the inmate population and makes recommendations for separations and transfers based upon evidence that he finds to be credible. ECF 53 ¶ 6. Wood tracks "[a]ll organizations that may pose danger to the security of DOC institutions" regardless of whether they are affiliated with any religious group. *Id.* p. 2. When he believes a separation may be warranted, he prepares a report that is circulated to other SCI-Fayette staff, who then indicate if they agree or disagree with his assessment by means of a document known as a vote sheet. *Id.* ¶ 7. If other staff agree and the Central Office approves, the separation goes into effect, usually by transferring an inmate to a new location. *Id.* ¶ 8.

Bailey is a Nation of Islam ("NOI") minister at SCI-Fayette. Being an inmate minister is a position of power within the prison population. ECF 53 ¶ 4. This position gives him certain authority over the NOI members and additional responsibilities such as speaking during services. ECF No. 10 ¶ 14. According to Wood, "[t]he security office tracks the Nation of Islam group because certain of its teachings may pose danger to the security of DOC institutions." ECF No. 53-3, p. 2. Bailey claims that Wood's surveillance of NOI is not because of any potential danger but because of prejudice against the NOI. ECF No. 56 ¶ 10.

Bailey asserts in his Complaint that in Spring of 2019, Wood had a discussion with Bailey in the presence of two other inmates, Taylor and Pulley. ECF No. 10 ¶¶ 8, 9. During that conversation, Wood informed Bailey that Carlos Mathis, a NOI inmate, was placed in SCI-Fayette's Restricted Housing Unit ("RHU") for violating DOC rules pending transfer to another prison. *Id.* ¶ 9. According to Bailey, Wood also asked him to tell inmate Lamar Gurdine to stop passing out NOI Literature in the prison's main yard. *Id.* ¶ 10. Bailey said that he later asked Gurdine to stop distributing literature in the yard, but Gurdine told him that prison officials had

already ordered him to stop doing so. *Id.* ¶ 11. After a second meeting during which Wood stated to Bailey that Gurdine had violated DOC rules about speaking during NOI services, Gurdine was placed in the RHU. *Id.* ¶¶ 12-15, 17. Gurdine was later transferred to another prison. *Id.* ¶ 17.

Wood does not recall having any conversations with Bailey about either Mathis or Gurdine. ECF No. 5 ¶ 2. Wood further states that he did not communicate any information pertaining to the transfer of inmates Mathis or Gurdine to any inmate. ECF No. 53 ¶¶ 16, 20.

After Mathis and Gurdine were transferred to other correctional institutions, Bailey read the "DOC separation rationales" that stated that both were transferred because Bailey "ordered a hit on them." ECF No. 10 ¶¶ 18, 19; ECF No. 53-4.[3] The separation reasoning states: "Reason: Inmate Mathis Had An Altercation With Inmate Bailey (foi-leader At Fyt) AND Fee Ls [sic] Retaliation Exist By Ordering A Hit (stg)." "Reason: Inmate Gurdine Has Attempted to Disrupte [sic] The Noi/foi During Lessons, Inmate Bailey Placed A "hit" On Inmate Gurdine For This." ECF No. 53-4.

This rationale for the transfers came as a surprise to Bailey because "Muslims, by Allah's command, can only engage in self-defense not 'hits.'" ECF No. 56 ¶ 5.[4] Bailey spoke to the NOI assistant inmate minister, Sean Bazemore (also a SCI-Fayette inmate), as well as other NOI member prisoners, about this information. ECF 10 ¶¶ 24, 26. Bailey asserts that Bazemore advised him that Wood told multiple NOI inmates that Bailey secretly requested the transfers of Mathis and Gurdine. *Id.* ¶ 24. Further, Bazemore told Bailey that Wood "first circulated implications [Bailey] was an informant among Nation of Islam inmates at SCI Fayette around the time of the

---

[3] Bailey does not explain how he obtained the separation rationale.
[4] Wood claims that "[a]s an inmate minister of the NOI, Plaintiff had the authority to order a hit to be carried out on other inmates." ECF No. 53-3 ¶ 9.

first Mathis meeting." *Id.* According to Bazemore, he was told by Wood that Bailey had requested that Bazemore be confined in the RHU and transferred but Wood stopped this from occurring. *Id.* Bailey also claims that he met with other NOI inmates who told him that Wood said that Bailey was the informant who requested the "apprehension" and transfers of Mathis and Gurdine. *Id.* ¶ 26. There were several discussions among the NOI inmates without Bailey's knowledge about whether he was an informant, which "explained the apparent tension among the [NOI] inmates throughout 2019." *Id.* All of this, according to Bailey, would likely subject him to "prison assaults/murder." *Id.* ¶ 27.

Wood denies that he either stated or implied to anyone that Bailey was an informant or that Bailey requested the transfer of any other inmate. ECF No. 53 ¶ 23; ECF No. 53-3 ¶ 14.

There is no evidence in the record that Bailey has ever been assaulted, threatened, or retaliated against by other inmates. ECF 53 ¶ 28.

### III. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *See id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an

absence of evidence in support of the non-moving party's claims. *See id.*; *see, e.g.*, *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *See Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820

(3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV. Discussion

Bailey brings civil rights claims under 42 U.S.C. § 1983 against Wood for First Amendment retaliation, violation of his equal protection rights under the Fourteenth Amendment, and state-created-danger. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, § 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

"The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotations and citations omitted). "Next, a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). That is because only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983.

While Bailey claims that Wood spread dangerous false information about him to NOI prisoners, Wood denies that he ever spoke to any inmate about the transfers of Mathis and Gurdine

7

or referred to Bailey as an informant. ECF No. 53-3 ¶ 14. Mindful of these conflicting statements, the Court will analyze each of Bailey's claims.

    A.  <u>First Amendment Retaliation Claim</u>

Bailey alleges that Wood retaliated against him for his role as a prison minister for the NOI inmates. He claims Wood moved two NOI inmates to the RHU and then transferred them to other prisons and falsely told other NOI prisoners that he was forced to do so because Bailey ordered a "hit" on them. Bailey also states that Wood falsely told inmate members of NOI that Bailey was an informant and by doing so, placed Bailey at risk to be harmed by other inmates.

A prisoner asserting a retaliation claim must allege facts demonstrating that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the existence of "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

When considering whether Bailey was engaging in constitutionally protected conduct, the Court may only consider religious "beliefs which are both 'sincerely held' and 'religious in nature' [to be] protected under the First Amendment." *Sutton v. Rasheed*, 323 F.3d 236, 251 (3d Cir. 2003), *as amended* (May 29, 2003). "The central and foundational tenets of the Nation of Islam meet the definition of religion as set forth in *Hialeah* [*Church of the Lukimi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)] and *Africa* [*Africa v Commonwealth of Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981)]." *Id.* at 252. Thus, as a Nation of Islam minister, Bailey meets the first

element of a retaliation claim.

While Wood acknowledges that Bailey's exercise of religion is protected conduct under the First Amendment, he contends that Bailey has not demonstrated the existence of an adverse action. He states that this is so because even if Bailey's allegations are accepted as true, spreading false statements is insufficient to deter a person of ordinary firmness from exercising his religious beliefs. According to Wood, First Amendment retaliation claims are validly dismissed where the asserted adverse action is simply that a correctional official allegedly "attempted to turn other inmates ... against [him]" by spreading rumors" without any allegation that any harm occurred as a result. *Neals v. Stromberg*, No. 16-cv-7141, 2020 WL 5088226, at *13 (D.N.J. Aug. 28, 2020). Thus, Wood contends, Bailey's allegation that Wood spread false information about him to other NOI inmates is "insufficient to meet the adverse action and causation elements of a First Amendment retaliation claim." *Neals*, 2020 WL 5088226, at *13.

Bailey does not contend in his brief that he was deterred from exercising his religion. Rather, he asserts that if Wood actually believed that Bailey had ordered a "hit" on other inmates, he should have issued a misconduct to Bailey. He also references other alleged transgressions of Wood and the security department at SCI-Fayette. These arguments are not relevant to the analysis of Wood's dispositive motion, however.

Wood is correct that even if it is assumed to be true that he spread false information about Bailey, he is entitled to judgment in his favor with respect to Bailey's First Amendment claim. As noted above, the mere dissemination of such information, without more, is insufficient to support the adverse action element of a retaliation claim. There is no evidence that Bailey was unable to practice his religious faith or was no longer able to serve as a NOI minister even if Wood told other

9

NOI inmates that he was an informant. Moreover, the Complaint does not allege, nor is there any other evidence, that Bailey sustained any harm as a result of Wood's conduct. While Bailey claims that the false information conveyed to other inmates placed him in danger of an assault or murder, he does not offer any evidence that even suggests that any such conduct occurred or for that matter, was even threatened.[5]

Thus, even viewing the facts in the light most favorable to Bailey, his retaliation claim fails because the alleged false comments and innuendo by Wood are not adverse actions that deterred Bailey from exercising his religious beliefs. Similarly, no facts were offered to show a causal link between Bailey's NOI status and the false information allegedly spread about him. Thus, Wood is entitled summary judgment with respect to Bailey's retaliation claim.

      B. <u>Equal Protection Claim</u>

Bailey alleges that he was treated differently by Wood because he is the prison minister for the NOI. Bailey contends that Wood "would not have been authorized to attempt conspiracy plot [sic] against [him] if [he] was the inmate Protestant minister or Catholic leader." ECF 10 ¶ 32.

It is undisputed that Wood's duties include safeguarding the security of the prison and that he does so regardless of an organization's affiliation or lack of affiliation with any religious group. He asserts that there is nothing in the evidentiary record to support Plaintiff's equal protection claim against him. Thus, Wood contends, he is entitled to judgment in his favor on this claim.

The Equal Protection Clause provides that no state shall "deny to any person within its

---

[5] In his response to Wood's motion, Bailey simply alleges that as a result of Wood's actions, he "suffered losts [sic] of relationships (and reputation) with former members of SCI-Fayette Nation of Islam services." ECF No. 57 ¶¶ 20, 21. There is no evidence in the record to support this assertion. At most, Bailey's Complaint states that there was discussion among NOI inmates about whether he was an informant, and allegedly, this created "apparent tension" during 2019.

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen. of State of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); s*ee also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

To establish a violation of the Equal Protection Clause based on his NOI religion, Plaintiff must prove, among other things, that he was similarly situated to other individuals who are not members of NOI but who received different treatment than him, and that this different treatment was the result of intentional discrimination based on his affiliation with NOI. *See, e.g.*, *Dehart v. Horn*, 390 F.3d 262, 272 (3d Cir. 2004); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) ("To state an equal protection claim, [the plaintiff] must alleged that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class, such as religious affiliation.")[6]

Bailey cites to the affidavits of fellow prisoners Raymont Walker (ECF No. 57-2 pp. 7-8) and Phillip Pulley (ECF No. 57-2 p. 12) as support for his equal protection claim. Walker's affidavit states that he was asked during a medical examination by an unidentified security

---

[6] Similarly, a plaintiff advancing an equal protection claim under a "class of one" theory must also show, among other things, that "the defendant[s] treated him differently from others similarly situated[.]" *Auslisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

11

lieutenant if he was fasting with the Nation of Islam. Pulley's affidavit states that he was surprised that Mathis was transferred to a lower-level security prison after he was cited for a misconduct. Neither of these affidavits, nor Bailey's conjecture about them, supports Bailey's equal protection claim against Wood. These facts, even if viewed in the light most favorable to Bailey, fail to show that he was treated differently than other prison ministers of different faiths or subject to discrimination based upon his NOI beliefs. Bailey has not offered evidence of any similarly situated persons who were treated differently. His comparison to hypothetical Catholic or Protestant ministers rumored to be child molesters, ECF No. 57 ¶ 30, is nothing but speculation and hyperbole. It is uncontroverted that Wood tracks all organizations, not just the NOI. Wood's monitoring of the NOI as part of his duties does not support Bailey's claim that he received different treatment than similarly situated individuals. Simply put, Bailey has offered no facts that could support a claim that he was intentionally treated differently than ministers of other religions who were similarly situated.

Bailey has also failed to provide any factual support for a claim that he was treated differently than other NOI inmates who were similarly situated. The transfer of Mathis and Gurdine, both of whom were identified as NOI inmates, is not evidence of intentional discrimination against Bailey, who is also associated with the NOI. The fact that the separation rationale includes references to the NOI fails to establish that Bailey was subjected to discrimination. Bailey was not disciplined or transferred, nor are there any facts of record that he sustained any harm as a result of the transfers of other inmates. Moreover, these transfers were based upon Bailey's alleged threats, not his faith.

For these reasons, summary judgment will be granted in favor of Wood on Bailey's equal protection claim.

C. State-Created-Danger

Bailey claims that when Wood falsely told multiple Nation of Islam inmates that Bailey was an informant and put a hit on Mathis and Gurdine , Wood put Bailey's life at risk. According to Bailey, Wood knew that this would likely subject him to assault or murder because "the label of informant is dangerous in a level four security prison." ECF No. 10 ¶ 27.

As previously addressed, whether Wood conveyed false information about Bailey is disputed. Nevertheless, Wood asserts that the prison has no duty to protect against prisoner-on-prisoner attacks, citing *DeShaney v. Winnebago County Department of Soc. Services*, 489 U.S. 189, 195–96 (1989). Wood also contends that Bailey failed to satisfy the elements of a state-created-danger claim because Wood had no intent of harming Bailey. Bailey's responsive memorandum fails to address these arguments.

The state-created-danger doctrine is a claim under the Due Process Clause of the Fourteenth Amendment. *See Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) ('[W]e first adopted the state-created danger theory as a mechanism by which plaintiffs may establish constitutional violations under 42 U.S.C. § 1983. We confirmed that liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."). *See also Kneipp v. Tedder,* 95 F.3d 1199, 1201, 1205 (3d Cir.1996); *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 478 (3d Cir.2003). However, the Supreme Court adopted the more-specific-rule based on its reluctance to expand the concept of substantive due process. *See Cnty. of Sacramento v. Lewis*,

13

523 U.S. 833, 842 (1998) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim.'" *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

As noted by the Third Circuit in *Betts v. New Castle Youth Development Center,* 621 F.3d 249, 261 (3d Cir. 2010), when allegations "fall squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses [plaintiff's] substantive due process claims." Here, Bailey's state-created-danger allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, and more specifically, the failure to protect. To succeed on a failure to protect claim, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

"The Eighth Amendment imposes 'a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners.'" *Evans v. Cameron,* 442 F. App'x. 704, 706 (3d Cir.2011) (quoting *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir.1997)). "To

14

the extent Plaintiff can show that the Defendant made deliberate disclosures to inmates with the intent to incite them to cause harm to Plaintiff, the Court believes that Plaintiff may state a failure to protect claim." *Williams v. Thomas*, No. 12-CV-01323, 2013 WL 1795578, at *7 (E.D. Pa. Apr. 29, 2013).

"Courts in the Third Circuit have recognized that being labeled a "snitch" may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." *Williams*, 2013 WL 1795578, at *5 (citing *Cooper v. Beard,* 2006 U.S. Dist. LEXIS 80655, *30 (E.D. Pa. 2006) ("[A] correction officer's labeling a prisoner a snitch constitutes an Eighth Amendment violation.")). *See also Brown v. Shrader*, No. 2:14-cv-1085, 2015 WL 5027510, *3 (W.D. Pa. Aug. 25, 2015) (plaintiff stated a failure to protect claim when a corrections officer called Plaintiff a "snitch" in front of other inmates.... and told other inmates that Plaintiff was "working with prison security.")

Here, there is a genuine issue of material fact whether Wood told NOI prisoners that Bailey was an informant who put a hit on certain NOI inmates and caused their transfer. According to Bailey, being identified in a prison setting as an informant created a risk to his safety.

"In making this objective determination of whether the risk of an inmate being assaulted by other inmates is sufficiently serious to trigger constitutional protection under the Eighth Amendment, 'the focus must be, not the extent of the physical injuries sustained in the attack, but rather the existence of a substantial risk of serious harm.'" *Williams*, 2013 WL 1795578, at *5 (quoting *Pearson v. Vaughn,* 102 F. Supp. 2d 282, 290 (E.D.Pa.2000)); *see also Williams,* 2013 WL 1795578 at *6 ("[T]he danger of labeling a prisoner a 'snitch,' district courts in this Third Circuit have found that the mere act of labeling a prisoner a snitch constitutes a

15

substantial risk of harm"); *Rodriguez v. Hayman,* No. 08–cv-4239, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009) ("[a]n inmate being labeled a snitch creates a substantial risk of harm.").

Thus, construing the evidence in the light most favorable to Bailey, there is sufficient evidence that by being characterized as an informant, he was at a risk of serious harm.

It must next be determined if Wood was deliberately indifferent to a substantial risk to Bailey. To demonstrate the existence of deliberate indifference to a risk of harm, a prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 825. The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). "[D]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017).

A defendant can rebut allegations of deliberate indifference "either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers–Capitol,* 256 F.3d at 133; *Reed v. Harpster*, No. 3:09-CV-1618, 2012 WL 2871797, at *5 (M.D. Pa. July 12, 2012), *aff'd*, 506 F. App'x 109 (3d Cir. 2012). "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Farmer,* 511 U.S. at 845.

16

In *Tabb v. Hannah*, a prisoner alleged he notified the prison on four separate occasions that CO Barnett labeled him a snitch, putting his life in danger. However, there were no allegations that the plaintiff was at risk of harm from his cell mate or that he was afraid of cell mate or any other prisoner. Accordingly, the court found that there were insufficient allegations to conclude that prison officials failed to protect Plaintiff from harm after the correctional officer allegedly labeled him a rat and a snitch. *See* No. 1:10-cv-1122, 2012 WL 3113856, *6 (M.D. Pa. July 30, 2012); *Williams*, 2013 WL 1795578, at *7.

Similarly, in *Jackson v. O'Brien*, the Court found a corrections officer was not deliberately indifferent because even if there were a substantial risk of harm to the plaintiff inmate, there was no evidence that the plaintiff feared an assault from another inmate as a result or that the corrections officer knew of any such fear. *See* No. 1:18-cv-00032, 2021 WL 3174687, *5 (W.D. Pa. July 27, 2021). Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. *See Jackson*, 2021 WL 3174687, at *5 (citing *Farmer*, 511 U.S. at 837).

Bailey has failed to offer any facts to support that Wood knew that Bailey faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Wood asserts that he did not wish any physical harm on Plaintiff. ECF No. 53 ¶ 26. While Bailey disputes this fact, he offers no admissible evidence of any intent to harm him. Further, it is uncontroverted that Wood was unaware of any threats or danger to Bailey. Notably, there is no evidence that Bailey informed Wood or any other corrections official that he feared attacks from other inmates or that he told anyone that he had been threatened or assaulted because he was identified as an informant. There is also no evidence that Wood learned of any threat to

17

Bailey from any other source.

Even if it could be concluded that Wood was deliberately indifferent to a risk to Bailey's safety, however, Bailey cannot meet the third element of a failure to protect claim. Simply put, there is no evidence that Bailey sustained any harm as a result of being labeled as an informant. He was not physically harmed or threatened by other inmates. At most, Bailey claims that being labelled an informant *can* put your life in danger, not that he was actually in danger. In fact, Bailey merely claims that there was some discussion among inmates about whether he was an informant, and this caused "apparent tension" among the NOI inmates. In addition to being inadmissible hearsay, the fact that discussions took place does not demonstrate the existence of any harm to Bailey. As such, there is no evidence that Bailey suffered any harm as a result of any conduct by Wood.

Because there are no genuine issues of material fact that could support Bailey's claim that Wood acted with deliberate indifference or that Bailey sustained any harm through Wood's conduct, summary judgment will be granted in Wood's favor on Bailey's Eighth Amendment failure to protect claim.

## V. Conclusion

For these reasons, the Court will grant Wood's Motion for Summary Judgment (ECF No. 52). An appropriate order will follow.

BY THE COURT:

Dated: December 9, 2022    /s/ Patricia L. Dodge
                           PATRICIA L. DODGE
                           United States Magistrate Judge